Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

District of

Division

Case No. _____

_(to be filled in by the Clerk's Office)_

Eric Ponder 61775-066
_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

Mr. Scott Finley
Mr. R Raup
Mr. Miller
Dr. Ellen N. Mace
_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.  Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
**SCRANTON**

APR 2 0 2021

Per_____
DEPUTY CLERK

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Eric Ponder |
| All other names by which you have been known: | |
| ID Number | 61775-066 |
| Current Institution | FJC.I Schuylkill |
| Address | P.O. Box 670 |
| | Minersville     Pa     17954 |
| | *City*    *State*    *Zip Code* |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Scott Finley |
| Job or Title *(if known)* | Warden of F.C.I. Schuylkill |
| Shield Number | |
| Employer | |
| Address | P.O. Box 670 |
| | Minersville     Pa.     17954 |
| | *City*    *State*    *Zip Code* |

[X] Individual capacity    [X] Official capacity

Defendant No. 2

| | |
|---|---|
| Name | R. Raup |
| Job or Title *(if known)* | Unit Manager of SCP Schuylkill |
| Shield Number | |
| Employer | |
| Address | P7O? Box 670 |
| | Minersville     Pa.     17954 |
| | *City*    *State*    *Zip Code* |

[X] Individual capacity    [X] Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

| | |
|---|---|
| Name | Mr. Miller |
| Job or Title *(if known)* | SCP Schuylkill Camp Administrator |
| Shield Number | |
| Employer | |
| Address | P.O. Box 670 |
| | Minersville      Pa.      17954 |
| | *City*          *State*      *Zip Code* |

[X] Individual capacity   [X] Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Dr. Ellen N. Mace |
| Job or Title *(if known)* | SCP/FCI Doctor and primary physician |
| Shield Number | |
| Employer | |
| Address | P.O. Box 670 |
| | Minersville      Pa.      17954 |
| | *City*          *State*      *Zip Code* |

[X] Individual capacity   [X] Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

[X] Federal officials (a *Bivens* claim)

[ ] State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C.  Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials? The above named individuals have failed to protect me from the dangerous and deadly virus COVID 19, in direct violation of the 8th amendment to the Constitution of The United States. And/Or, take the appropriate steps necessary to ensure I had the best protection from the virus according to CDC guidelines and Former A.G Barr's Directive See Attachments

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.   In addition to the forementioned above mentioned individuals are guilty of Deliberate indifference by ignoring and covering up my severe illnesses which make me vulnerable to COVID 19 and manipulating my pattern score and all the criterias I meet making me eligible for home confinement placement. Please see attachments.

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [ ] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [ ] Convicted and sentenced state prisoner
- [X] Convicted and sentenced federal prisoner
- [ ] Other *(explain)* _____

## IV.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Please see attachments

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

Please See Attachments

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.      What date and approximate time did the events giving rise to your claim(s) occur?

Detailed in attachments: Please see attachments

D.      What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

Detailed in attachments: Please see attachments

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Detailed within attachments: Please see attachments

## VI.  Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims. I'm, asking the court to intervene and hold the administration of Schuylkill responsible for endangering the lives of inmates and demand immediate release for those inmates qualified to Home Confinement. I'm also asking the court to reward my time of hardship, spent in quarantine and modified operations with additional time towards my sentence. By granting me additional days for everyday spent as such. (hardship) This time should go towards the actual time I have to spend with good time crediteand not the full imposed sentence. And to order Schuylkill to release all recordds related to COVID Pandemic per Request.

## VII.   Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.     Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

F.C.I./SCP Schuylkill

B.     Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.     Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☐ No

☒ Do not know

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

If yes, which claim(s)? As explained in the attachments, the institution has been rejecting grievances since the onset of the pandemic for frivilous reasons not consistent with FBOP policy. So I can't determine to what capacity they coulddcorrect the behavior other than to stop it and correct all unjust decisions that they have displayed

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

[X] Yes

[ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

[ ] Yes

[ ] No

E.    If you did file a grievance:

1.    Where did you file the grievance? Grievances were filed with the Unit Team at SCP Schuylkill for informal resolution, the Warden of SCP Schuylkill, Northeastern Region and Central

2.    What did you claim in your grievance? The same issues that are found in attached statement. That the institution has manipulated records to deny qualified inmates placement to Home Confinement due to Cares Act, Manipulated medical records, maliciously interferred with the inmate grievance process to discourage filing and delaylresponse time and failed to protect inmates from COVID 19 in violation of our 8th amendment rights provided by the Constitution of the United State

3.    What was the result, if any? All grievances wererrejected.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

4.  What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

F.  If you did not file a grievance:

1.  If there are any reasons why you did not file a grievance, state them here:

2.  If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. Please find included within, copies of the grievances filed to the Warden, Northeastern Region and Central with copies of their responses. Informal Resolution is done by computer and sending emails to Unit Team at the institution. JCopies can be provided upon request.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition. _____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

7.  What was the result of the case?  *(For example:  Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☒ No

D.  If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

    Plaintiff(s)     _____

    Defendant(s)   _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

3.  Docket or index number

4.  Name of Judge assigned to your case

5.  Approximate date of filing lawsuit

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition     _____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   3/17/2021

Signature of Plaintiff   *Eric Ponder*
Printed Name of Plaintiff   Eric Ponder
Prison Identification #   61775-066
Prison Address   P.O. Box 700
Minersville    Pa.    17954
City    State    Zip Code

### B.   For Attorneys

Date of signing:   _____

Signature of Attorney   _____
Printed Name of Attorney   _____
Bar Number   _____

Name of Law Firm

Address

_____

_____

_____
    *City*                    *State*            *Zip Code*

Telephone Number

E-mail Address

TRULINCS 61775066 - PONDER, ERIC - Unit: SCH-E-A

-----------------------------------------------------------------------------------------------

FROM: 61775066
TO:
SUBJECT: Statement of Facts
DATE: 03/19/2021 10:25:12 AM

RE: Attachment/ Comprehensive Statement of facts.

Since the onset of the COVID 19 pandemic, The administration at F.C.I./SCP Schuylkill has acted maliciously and negligent in responding to this dangerous pandemic and doing their best to protect inmate lives. Despite the importance of Former A.G. Barr's memorandum to release all eligible inmates to Home Confinement or recommend them for Compassionate Release the Administration has done everything to undermine it's pure intent. By misrepresenting, even forging medical documents, manipulating inmates PATTERN scores in order to make qualified inmates seem ineligible, manipulating the FBOP grievance system by rejecting grievances for fraudulent reasons not consistent with FBOP Program Statement, lying about their ability to handle the pandemic and touting proudly that Schuylkill wouldn't have an outbreak. With the main purpose of keeping inmates who are qualified for Home Placement locked up.

I petitioned the institution for Home Confinement under CARES ACT in April and September and was denied both times. The reasons given were: 1) I was a "LOW" recidivism PATTERN score, with priority given to those inmates who are MINIMUM scores, 2) I had no illnesses which make me vulnerable to catching COVID 19 and 3) There were no cases of COVID 19 infections At Schuylkill F.C.I. Facility or SCP (Camp). The third reason was the only reason with merit at that time. Because I had been a MINIMUM pattern score since the onset of the pandemic and have multiple comorbidities making me vulnerable to contracting COVID 19. (Such as Low White Blood Cells which is known to be a immune deficiency issue (leukocytopenia), Anemia, Asthma, Grade III Diastolic Heart Murmur, Sickle Cell Trait, Low Red Blood Cells due to Deficient Hemoglobin and half of my red blood cells being sickle. With all this, the addition of Sinus Rhinitis and severe allergies make me extremely at risk. But how could SCP Schuylkill's medical professionals miss all this information when they are the ones who have my labs from three different institutions stating the same thing!!!!! Please see Exhibits marked medical files/pages 1 to 14.

This process was initially suppose to start with the inmate petitioning Unit Team for Home Confinement. The Unit Team then communicates with medical to get an assessment of inmate's medical history to determine if He/she has illnesses making them vulnerable to contracting COVID 19. Which in my case would have been Doctor Ellen Mace. After medical's recommendation the Unit Team prepares a package and present it to the Warden of the Institution. However, this process was circumvented and the decision to send inmates home was given to "One" Man, Unit Manager Raup. Who allowed his personal biases towards convicted felons and racial prejudice to determine who he wanted to release and keep. Certainly making him guilty of "Deliberate Indifference".

I spoke with Unit Manager Raup after the first denial and ask him to rescore my PATTERN recidivism score which he did. And due to a miscalculation of the previous administration, Mr. Raup informed me that I was indeed a MINIMUM PATTERN score. The previous administration had failed to factor in inmates program participation which helps to lower inmate's scores. In addition to this fact, my 51st birthday was approaching which would also drop my score. I was asked if I wanted to wait until my birthday to make the adjustment or that he could adjust it at that moment, believing I would definitely be a MINIMUM either way. I elected to wait until my birthday (September 19, 2020), only to receive a denial on September 22nd for being a LOW PATTERN RECIDIVISM SCORE again. I requested a paper copy of my actual PATTERN score and was given a paper my Unit Manager Raup stating I was a minimum score and eligible for CARES ACT. So why was I rejected for being a "Low". Please see documents marked Exhibits 1A to 1E.

Lastly, the administration is grossly undermining the pure intent of the FBOP's Administrative Remedy Program by rejecting BP 9's for reason inconsistent with program policy. I can only assume this is done to discourage inmates from filing while trying to keep their actions concealed from public scrutiny. At minimum, to delay the process of appealing to hire levels. Which really doesn't matter because the higher levels (Northeastern Region/Central) have been upholding these rejections despite their inconsistency with FBOP policy. I've included one case within this statement as an example. Please see Exhibits 2A1-2A3/ 3A and 3B/ 4A, 4B, 4C.

I filed a grievance BP 9 to the Warden after we got off of the 38 day quarantine in the Medium facility. The BP 9 was rejected offering 4 reasons that wasn't consistent with policy. The two reasons that were close to having validity was that I didn't use informal resolution before petitioning the Warden and didn't include an extra copy of my attachment sheet. However, Policy offers that when informal resolution is frivolous, a inmate can exclude that step of seeking help to remedy an issue. Yet in still, I re-filed. The rejection of my BP 9 was dated February the 9th and I was given five days to correct the issues. However, I received the denial in inmate mail on the 22nd of February. (13 days after the initial denial) This alone goes against FBOP policy since the returns of grievances suppose to be done by Unit Team, dated and logged. I spoke with Unit Manager Miller

TRULINCS  61775066 - PONDER, ERIC - Unit: SCH-E-A

------------------------------------------------------------------------------------------------------

who informed me to just start the process over so I did.

I filed an informal resolution that was answered within 5 days and then filed another BP 9 to the Warden. Needless to say, it was rejected because I didn't submit it within the five day period. As I mentioned, the previous rejection was sent to me through mail and received 12 days after the rejection. How could I respond within 5 days to a rejection that I received 12 days after being rejected?!!! These are the games that are being played with inmates only source to seek justice on issues that might arise while incarcerated. Unfortunately, it has come down to the courts being our only attempt to rectify issues that we have with the BOP.

The FBOP is in violation of inmate's 5th amendment rights by changing our sentencing judges time of confinement to a possible death sentence. It's a well known documented fact that inmates have died from contracting COVID 19. And the FBOP inability to stop the spread of it in confined places such as these jails. It's also a violation of inmate's 8 amendment rights to be protected from cruel and unusual punishment by placing inmates in quarantine in an environment that has already been seized by the COVID 19 virus. Taking camp inmates inside the medium institution that was already experiencing a outbreak and putting them in a cell for 24 hours a day subjecting them to the virus without proper medical treatment was synonymous to the punishment of Segregated Housing Units, even worse. Inmates couldn't even buy medication in quarantine while inmates in SHU get to purchase medication from commissary unless found guilty of the infraction they are being segregated for. While inmates in quarantine were only able to purchase batteries and stamps. Please see the letter included "COVID OUTBREAK AT F.C.I./SCP SCHUYLKILL for the details of this occurrence. Thus, also rendering the third reason offered by the Warden and the administration for my denial of Home Confinement which stated, "There are currently no cases of infections at Schuylkill institution, mute. To date, there has been over 600 infections in a institution that combined with the Medium facility and camp houses close to 1100 inmates.

The petitioner request that the Honorable Court gives a order to protect petitioner from Officer or administration retaliation which is a common practice within the BOP when inmates fight the administration. Petitioner request court appoints attorney due to the severe nature of His request, orders the administration to release qualified inmates to Home Confinement creating a safer environment, grant petitioner all relief within the courts jurisdiction, reward petitioner with extra days for each day spent within the hardship of the pandemic after the onset of "Modified Operations" since March 31 2020, rewards petitioner extra days for each day spent in quarantine at the medium facility and camp (totaling 42 days of quarantine and orders institution to turn over all documents relevant to this case.

TRULINCS 61775066 - PONDER, ERIC - Unit: SCH-E-A

---------------------------------------------------------------------------------------------------------------

FROM: 61775066
TO:
SUBJECT: COVID 19 Outbreak at F.C.I. and SCP Schuylkill
DATE: 03/19/2021 09:37:59 AM

Eric Ponder 61775066
SCP Schuylkill
P.O. Box 670
Minersville, Pa. 17954
March 18, 2021

RE: Covid outbreak at F.C.I. and SCP Schuylkill

Since the former President announced a "NATIONAL EMERGENCY" due to the coronavirus pandemic, F.C.I. Schuylkill has bolstered its letters to Judges, District Attorneys and Media about their ability to contain and handle the pandemic and keep inmates safe. "Especially" those inmates who have illnesses that make them vulnerable to contracting the COVID 19 virus. This theory was recently tested. And what follows is a detailed explanation of this wonderful plan that Schuylkill touted for so many months. When the only correct plan was to send qualified inmates to Home Confinement or recommend them for Compassionate Release as instructed by former A.G. Barr. However, systematic racism and prejudice behavior is more than just a suspension inside of this facility.

The first week of December 2020, the medium facility of Schuylkill began to experience a outbreak with 12 inmates and 5 officers testing positive for COVID 19. Within a two week period this number jumped to 155 inmates testing positive. And this number was quoted by officers as not being reflective of the true number of cases that existed. Schuylkill found itself with an additional problem, SCP Schuylkill (the camp) showed it's first sign of infected inmates December 22nd. Three inmates from Building 2 Camp and 1 inmate from building 1 camp tested positive for the virus. On December 23rd, Schuylkill tested all camp inmates and found that 33 inmates had contracted the virus. Although this was approximately 1/4 of all inmates, the entire Camp, building 1 and 2 was moved inside the Medium facility for Quarantine, consisting of approximately 127 inmates total. A movement which violates FBOP protocol for inmate classification levels. Since all Camp inmates are minimum security levels and need special certification to even work inside a gated facility.

After the movement to the Medium Facility, inmates were doubled up and placed in cells for 24 hours 7 days a week. With the exception of 15 minute showers on Monday, Wednesday and Friday. Inmates were denied access to Phones, emails, commissary and even denied proper sick call procedures. I personally had no access to a very important nasal spray due to the privilege of commissary being taken away and medical's refusal to provide me with such. Although my medical history shows I suffer from severe allergies, and sinus infections. Inmates received no proper treatment who contracted the virus for the duration of the quarantine. Just locked in a cell in order for the virus to run it's course.

One inmate complained that he was vomiting for five days and never received a trip to the ER. Another 80 year old man couldn't get out of his bed for three days and received no proper treatment. Another inmate who was denied CARES ACT and a recommendation for Compassionate Release suffered the long lasting effects of COVID 19 by having blood clots and permanent damage to his lungs. This inmate was told it's possible he may die if he ever contracted the virus again. So the question remains, what was the great, unstoppable plan that the administration had to handle a COVID 19 outbreak? Herd Immunity?!!!! Let them all catch the virus, let it run it's course and if someone dies it's just a casualty of this war against the virus? After all, why would inmates be taken into an area that was already greatly seized by the virus!!!!!?

Let me elaborate some more. On December 23rd, as stated, 33 inmates tested positive for COVID 19 in SCP Schuylkill Camp. But 127 inmates was moved from the Camp to inside the medium facility that was already experiencing an outbreak. On January 11, the 20th day of quarantine, those inmates who tested positive December the 23rd was sent back to the camp and all other inmates remained. On January 12th, all inmates were tested for a second time. 31 more inmates tested positive and all inmates, positive and negative was made to continue quarantining. On January 25th (34 days into the quarantine), the second batch of inmates who tested positive was sent back to the camp and all remaining inmates were tested again. This time 5 inmates (two of which were transfers who hadn't spent one day in Schuylkill Camp) tested positive. On January 29th all inmates except the 5 inmates who tested positive the third time was sent back to the camp. This is 38 days of quarantine with at least fifty inmates never testing positive. Where does CDC require this length of quarantining for people who aren't positive after 14 days?! To date, the website doesn't list one infection for camp inmates.

I question: How did inmates moved from the camp to the medium facility test positive after 21 days of quarantine? How did these same inmates test positive after 34 days of quarantine? How did inmates who were transferred from other institutions test

TRULINCS 61775066 - PONDER, ERIC - Unit: SCH-E-A

---------------------------------------------------------------------------------------------------------

positive when they never spent one day in the camp and was in the SHU quarantining since their arrival at Schuylkill? One inmate said he was in quarantine for 90 days total. Especially if we were sent to an environment in which quarantining was suppose to prevent infection!!

So this is the elaborate plan Schuylkill had to control and handle the virus if there was an outbreak. Instead of following former A.G. Barr's recommendation to send qualified inmates to Home Confinement in order to lesson the number of inmates incarcerated. And by doing so, give the opportunity for real social distancing and proper medical treatment. Instead, while there was an outbreak, inmates were still reporting to UNICOR for work and returning back to their confined cubicles at the camp after work. Exposing themselves and other inmates to outside contact. Inmates were still made to report to the Medium facility to clean the administration building while there was an outbreak going on there and then allowed to return back to the camp. All this while there was a so called "Enhanced Modified Operations". Go figure. This is a direct violation of inmates 8th amendment rights provided by the United States Constitution. Afforded even to human beings who have committed a crime. But the FBOP has no place for correct action during this pandemic. Their only concern is how to keep inmates incarcerated during the pandemic.

And now, this 15 day of February, only 17 days after the quarantine of camp inmates ended, F.C.I. Schuylkill is in the midst of another outbreak. With approximately 225 inmates being infected and 25 staff members. Something has to be done. Something must be done!!! Someone has to be held accountable for the negligence of the administration to simply tell the truth and do what needs to be done to protect human lives. Even now, March 02, 2021 Building 1 in the Camp is quarantined due to two inmates testing positive for COVID 19. WE BELIEVE ALL LIVES MATTER, RIGHT!!!!!!!

Exhibit 1A

TRULINCS  61775066 - PONDER, ERIC - Unit: SCH-E-A

--------------------------------------------------------------------------------

FROM: 61775066
TO: CAMP UNIT TEAM
SUBJECT: ***Request to Staff*** PONDER, ERIC, Reg# 61775066, SCH-E-A
DATE: 11/23/2020 10:40:57 AM

To: Mr Raup/ Mr Mroczka
Inmate Work Assignment: Camp 1 Orderly

Dear Unit Team, On September 21, 2020 Mr Raup re-adjusted my Pattern Score informing me that I had a minimum pattern score and this new calculation was in the computer. I'm requesting a copy or any statement saying such for Legal Appeal reasons. The previous administration distributed a template form informing each inmate of their pattern score once they were calculated. This would suffice my needs.

Thank you very much for your help

Eric Ponder.

Exhibit 1B

DATE REVIEWED: 10/07/2020

INSTITUTION:   SCP SCHUYLKILL      UNIT:      CAMP
INMATE NAME:   Ponder, Eric       REG NO:    61775-066

FIRST STEP ACT (Circle One):   (ELIGIBLE)   /   INELIGIBLE

RECIDIVISM RISK LEVEL (Circle One):   (MINIMUM)   LOW   MEDIUM   HIGH

Exhibit 1C

PONDER, Eric
Reg. No. 61775-066
Unit Camp 1
Request to Staff Response

RESPONSE

This is in response to your Request to Staff received on
May 5, 2020, in which you request you be recommended to serve the
remainder of your sentence on home confinement in accordance with
Attorney General William Barr's Memorandum, dated
March 26, 2020, due to the spread of the Novel Coronavirus.

The BOP is taking extraordinary measures to contain the spread of
the Coronavirus and treat any affected inmates.  We recognize
that you, like all of us, have legitimate concerns and fears
about the spread and effects of the virus.  Currently, section
12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security
Act ("CARES Act") grants discretion to the BOP to place inmates
on home confinement for a longer term under 18 U.S.C. 3624(c)(2).
The BOP's discretion is guided by criteria listed in memoranda
from the Attorney General.

After a complete review of your circumstances based upon the
Attorney General's criteria, we have determined you are not
eligible for home confinement placement.  Specifically, you
currently score as a "Low" risk of recidivism and your intended
release residence is located in an area which has a significant
level of COVID-19 infection as per CDC statistics. In view of the
fact FCI Schuylkill does not have any confirmed staff or inmate
cases of COVID-19 at the present time, the conditions of your
release present a significantly higher risk of contracting COVID-
19 than your current confinement at SCP Schuylkill.

Your request for home confinement based on concerns about
COVID-19, is denied.

If you are not satisfied with this response to your request, you
may commence an appeal of this decision via the administrative
remedy process by submitting your concerns on the appropriate
form (BP-9) within 20 days of the receipt of this response.

_____          05/18/20
Scott Finley/Warden              Date

EXhibit 1D

PONDER, Eric
Reg. No. 61775-066
Unit Camp 1
Request to Staff Response
Page 1 of 2

RESPONSE

This is in response to your Request to Staff received on
September 3, 2020, in which you request Compassionate Release.
You state you have pre-existing medical conditions which put you
at risk for contracting COVID-19. Additionally, you indicate you
are appropriate for release to home confinement in accordance
with the CARES Act.

Title 18 of the United States Code, section 3582(o)(1)(A), allows
a sentencing court, on motion of the Director of the BOP, to
reduce a term of imprisonment for extraordinary or compelling
reasons. BOP Program Statement No. 5050.50, Compassionate
Release/Reduction in Sentence: Procedures for Implementation of
18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the
types of circumstances that present extraordinary or compelling
reasons, such as the inmate's terminal medical condition;
debilitated medical condition; status as a "new law" elderly
inmate, an elderly inmate with medical conditions, or an "other
elderly inmate"; the death or incapacitation of the family member
caregiver of the inmate's child; or the incapacitation of the
inmate's spouse or registered partner. Your request has been
evaluated consistent with this general guidance.

A review of your case, indicates your medical history does not
meet the criteria, as stated above, regarding a Compassionate
Release/RIS for inmates with medical conditions.  You are
currently able to independently adapt to activities of daily
living and are able to perform self-maintenance activities in a
correctional environment.  Accordingly, your Compassionate
Release/RIS request is denied at this time.

The BOP is taking extraordinary measures to contain the spread of
COVID-19 and treat any affected inmates. We recognize you, like
all of us, have legitimate concerns and fears about the spread
and effects of the virus. Currently, section 12003(b)(2) of the
Coronavirus Aid, Relief, and Economic Security Act ("CARES
Act") grants discretion to the BOP to place inmates on home
confinement for a longer term under 18 U.S.C. 3624 3624(c)(2).
The BOP's discretion is guided by criteria listed in memoranda
from the Attorney General.

After a complete review of your circumstances, we have determined
your recidivism score of "low" disqualifies you from

EXHIBIT 1E

PONDER, Eric
Reg. No. 61775-066
Unit Camp 1
Request to Staff Response
Page 2 of 2

consideration as a priority placement. It should also be noted,
you requested home confinement in accordance with the CARES Act
on May 5, 2020, which was denied. Your request for home
confinement based on concerns regarding COVID-19 is denied.

If you are not satisfied with this response to your request, you
may commence an appeal of this decision via the administrative
remedy process by submitting your concerns on the appropriate
form (BP-9) within 20 days of the receipt of this response.

_Scott Finley_ Warden

Scott Finley, Warden

09/18/20

Date

EXHIBIT 2A-1

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 9, 2021


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SCHUYLKILL FCI

TO  : ERIC PONDER, 61775-066
      SCHUYLKILL FCI      UNT: CAMP      QTR: E01-019L
      P.O. BOX 700
      MINERSVILLE,  PA 17954


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1068535-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : FEBRUARY 9, 2021
SUBJECT 1       : OTHER OPERATIONS
SUBJECT 2       : OTHER MEDICAL MATTERS
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

REJECT REASON 2: YOU DID NOT SUBMIT THE CORRECT NO. OF COPIES OF THE
                ATTACHMENTS (NEW DOCUMENTATION NOT CONSIDERED BY LOWER
                LEVELS) 2 AT INSTITUTION; 3 AT REGION; AND 4 AT CENTRAL
                OFFICE. THE NUMBER CITED INCLUDES YOUR ORIGINAL.

REJECT REASON 3: YOU MUST PROVIDE MORE SPECIFIC INFORMATION (E.G. CASE NO.)
                ABOUT YOUR REQUEST/APPEAL SO THAT IT MAY BE CONSIDERED.

REJECT REASON 4: SEE REMARKS.

REJECT REASON 5: YOU MAY RESUBMIT YOUR REQUEST IN PROPER FORM WITHIN
                5 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REMARKS         : YOU MUST BE CLEAR ON YOUR REQUEST AND RELIEF SOUGHT.
                YOU CAN ONLY FILE ON ONE TOPIC, AND YOU DESCRIBE
                MULTIPLE. PLEASE SEE YOUR UNIT MANAGER.


FCI Schuylkill

FEB 0 3 2021

Warden's Office

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

EXHIBIT 2A-2

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Ponder   Eric          61775-066   Comp 1   Schuylkill (SCP)
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A– INMATE REQUEST**

The institution is failing to protect me from COVID 19 in direct violation of my 8th Aomendment rights.

Please   See   Attachment

02/08/21 EP

*Eric Ponder*

DATE                          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

FCI Schuylkill
FEB 09 2021
Warden's Office

DATE                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 1068535-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

DATE                          RECIPIENT'S SIGNATURE (STAFF MEMBER)

TRULINCS 61775066 - PONDER, ERIC - Unit: SCH-E-A       *EXHIBIT 2A3*

--------------------------------------------------------------------------------

FROM: 61775066
TO:.
SUBJECT: BP'9
DATE: 02/07/2021 02:12:14 PM

Please accept this as my complaint against F.C.I. /SCP Schuylkill for failure to protect me from COVID 19 as a direct violation of my 8th amendment rights afforded by the United States Constitution. Instead of sending qualified inmates to Home Confinement or recommending them for Compassionate Release as directed by Former A.G. Barr, F.C.I. Schuylkill has touted their ability to safely protect inmates from the corona virus. And have manipulated inmates PATTERN Scores and misrepresented inmates medical records to make qualified inmates seem unqualified. While stating they have correct procedures in place to protect inmates and offer proper treatment in accordance to CDC recommendations and directives.

The first week of December, F.C.I. Schuylkill experienced a COVID 19 outbreak at the medium facility. Approximately two weeks later, SCP (camp) begin to experience an outbreak as well. December 23rd all camp inmates, approximately 130 inmates, were tested for COVID 19. Although only approximately 34 inmates tested positive, all inmates from the camp were moved inside the medium facility for quarantine, despite their present custody levels being minimum security. January 11th, 20 days into quarantine, all inmates who tested positive during the first testing were sent back to the camp and all other inmates were made to remain for further quarantining. On January 12th all inmates were tested for a second time and approximately 31 more inmates tested positive. Despite only 31 inmates testing positive, all inmates were made to continue quarantining. January 25th, 34 days into quarantining, those inmates who tested positive during the second testing was released back to the camp and the remaining inmates were made to continue quarantining. On January 26 all remaining inmates were tested and five inmates tested positive. It's important to note that two of these inmates who tested positive were transfers from other institutions and never spent one day in SCP Schuylkill Camp. And they had already been in the SHU in the medium quarantining for a extensive period of time. One inmate expressed that he had been in quarantine since November of 2020. Yet, on January 29th, all inmates who tested negative, all three times of testing were finally released to go back to the camp while the inmates who tested positive were made to continue quarantining. I never read any CDC guidelines which called for 38 days of quarantining and three negative test.

During this quarantine, inmates were locked in a cell for 24 hours, seven days a week, with the exception of 15 minute showers on Monday, Wednesday and Friday. Inmates had no access to phones, computers, commissary, proper medication, were served cold food who's proportions weren't in accordance with the FBOP's daily recommended amount. I was denied medical treatment and told I couldn't get the necessary nasal spray needed for my severe sinus rhinitis because the administration wouldn't allow us to go to the store. Although inmates were allowed to purchase batteries and stamps weekly. I explained to three different nurses the necessity of my nasal spray and if I couldn't buy it from commissary, medical should supply me with it. This request went ignored for 38 days.

No one was given proper treatment. There were no ventilation/respirator machines. Inmates were just locked in their cell for the virus to run it's course and supplied with Tylenol. One inmate complained that he was vomitting for five days and felt like he was dying. But never received a trip to the ER. Another inmate, age 80, was confined to his bed for three days and needed help just to use the bathroom, likewise never received a trip to the ER. A third inmate suffers from the long lasting effects of contracting COVID 19 by suffering from lung problems and blood clots.. This inmates was denied Home Confinement by the institution for frivilous reasons to cover up the real cause, Prejudicial discrimination. I too was told by this administration that I had no illnessess that make me vulnerable to contraction COVID 19 and was a Low PATTERN score, with priority given to inmates who have a Minimum PATTERN score. Needless to say I'm a minimum PATTERN score and have multiple comorbidities making me vulnerable to contracting COVID 19.

No contact tracing was done. And the administration won't acknowledge that the majority of inmates who tested positive worked at UNICOR FACILITY while the outbreak was taking place at the medium facility. Having direct contact with officers who go home everyday and was frequenting the medium during the outbreak. Other inmates were made to work in the lobby of the Medium Facility, cleaning it and then returning back to the Camp. Was the institutions plan "Herd Immunity"? If they all get infected, we don't have to worry about it anymore. And if one or more die, it's the casualties of the war we're fighting against this virus. Without recognizing that one life lost to this virus is "one too many". After all, why else would inmates be taken into an already existing outbreak in order to Quarantine? Like I said, it's a direct violation of our Constitution Rights and a great neglect to protect inmates from the COVID Pandemic. I believe the institution should be investigated for this behavior and made to send qualified inmates home on Home Confinement so they can really have protection from the ill effects of COVID 19, mainly the death that is causes.

# EXHIBIT 3A

PWS-02

SCH 1330.13G
Attachment 1

## FCI Schuylkill, Pennsylvania
Ponder # 61775-066

### ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
### INFORMAL RESOLUTION FORM

**NOTE TO INMATE:**   You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13), you MUST attempt to informally resolve your complaint through your Correctional Counselor.  Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally and state the names of staff contacted.

Issued By: _____CD_____ (Initials of Correctional Counselor)

Date Issued To The Inmate: _2/28/2021_

INMATE'S COMMENTS:

1.   Complaint: SCP Schuylkill has failed to protect me from COVID 19 in direct violation of my 8th amendment to the Constitution of United States of America. Please see attachment

2.   Efforts you have made to informally resolve complaint: This is my first attempt at informal resolution, I previously submitted a BP 9 to the Warden that was rejected for not filing a BP 8 first

3.   Names of staff you contacted: I spoke with Unit Manager Miller and was informed to start the process anew

Date Returned to Correctional Counselor: _3/01/21_

_Eric Ponder_ ___ _61775-066_ ___ _2/28/21_
Inmate's Signature      Reg. Number      Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1.   Efforts made to informally resolve and staff contacted: Currently the SCP has zero (0) active COVID cases. FCI Schuylkill continues to follow the BOP COVID-19 Pandemic Plan for infection prevention and control measures, COVID-19 screening and testing, inmate quarantine and isolation precautions.

Date BP-229(13) Issued: _3/8/2021_ # _08-02_ _C Dww M_
                                        Correctional Counselor

Date Informally Resolved: _____ #_____ _____
                                        Inmate's Signature

Unit Manager Review: _____ Date:_____

EXHIBIT 3B

TRULINCS  61775066 - PONDER, ERIC - Unit: SCH-E-A

---------------------------------------------------------------------------------

FROM: 61775066
TO:
SUBJECT: BP'9
DATE: 02/07/2021 02:12:14 PM

Please accept this as my complaint against F.C.I. /SCP Schuylkill for failure to protect me from COVID 19 as a direct violation of my 8th amendment rights afforded by the United States Constitution. Instead of sending qualified inmates to Home Confinement or recommending them for Compassionate Release as directed by Former A.G. Barr, F.C.I. Schuylkill has touted their ability to safely protect inmates from the corona virus. And have manipulated inmates PATTERN Scores and misrepresented inmates medical records to make qualified inmates seem unqualified. While stating they have correct procedures in place to protect inmates and offer proper treatment in accordance to CDC recommendations and directives.

The first week of December, F.C.I. Schuylkill experienced a COVID 19 outbreak at the medium facility. Approximately two weeks later, SCP (camp) begin to experience an outbreak as well. December 23rd all camp inmates, approximately 130 inmates, were tested for COVID 19. Although only approximately 34 inmates tested positive, all inmates from the camp were moved inside the medium facility for quarantine, despite their present custody levels being minimum security. January 11th, 20 days into quarantine, all inmates who tested positive during the first testing were sent back to the camp and all other inmates were made to remain for further quarantining. On January 12th all inmates were tested for a second time and approximately 31 more inmates tested positive. Despite only 31 inmates testing positive, all inmates were made to continue quarantining. January 25th, 34 days into quarantining, those inmates who tested positive during the second testing was released back to the camp and the remaining inmates were made to continue quarantining. On January 26 all remaining inmates were tested and five inmates tested positive. It's important to note that two of these inmates who tested positive were transfers from other institutions and never spent one day in SCP Schuylkill Camp. And they had already been in the SHU in the medium quarantining for a extensive period of time. One inmate expressed that he had been in quarantine since November of 2020. Yet, on January 29th, all inmates who tested negative, all three times of testing were finally released to go back to the camp while the inmates who tested positive were made to continue quarantining. I never read any CDC guidelines which called for 38 days of quarantining and three negative test.

During this quarantine, inmates were locked in a cell for 24 hours, seven days a week, with the exception of 15 minute showers on Monday, Wednesday and Friday. Inmates had no access to phones, computers, commissary, proper medication, were served cold food who's proportions weren't in accordance with the FBOP's daily recommended amount. I was denied medical treatment and told I couldn't get the necessary nasal spray needed for my severe sinus rhinitis because the administration wouldn't allow us to go to the store. Although inmates were allowed to purchase batteries and stamps weekly. I explained to three different nurses the necessity of my nasal spray and if I couldn't buy it from commissary, medical should supply me with it. This request went ignored for 38 days.

No one was given proper treatment. There were no ventilation/respirator machines. Inmates were just locked in their cell for the virus to run it's course and supplied with Tylenol. One inmate complained that he was vomitting for five days and felt like he was dying. But never received a trip to the ER. Another inmate, age 80, was confined to his bed for three days and needed help just to use the bathroom, likewise never received a trip to the ER. A third inmate suffers from the long lasting effects of contracting COVID 19 by suffering from lung problems and blood clots.. This inmates was denied Home Confinement by the institution for frivilous reasons to cover up the real cause, Prejudicial discrimination. I too was told by this administration that I had no illnesss that make me vulnerable to contraction COVID 19 and was a Low PATTERN score, with priority given to inmates who have a Minimum PATTERN score. Needless to say I'm a minimum PATTERN score and have multiple comorbidities making me vulnerable to contracting COVID 19.

No contact tracing was done. And the administration won't acknowledge that the majority of inmates who tested positive worked at UNICOR FACILITY while the outbreak was taking place at the medium facility. Having direct contact with officers who go home everyday and was frequenting the medium during the outbreak. Other inmates were made to work in the lobby of the Medium Facility, cleaning it and then returning back to the Camp. Was the institutions plan "Herd Immunity"? If they all get infected, we don't have to worry about it anymore. And if one or more die, it's the casualties of the war we're fighting against this virus. Without recognizing that one life lost to this virus is "one too many". After all, why else would inmates be taken into an already existing outbreak in order to Quarantine? Like I said, it's a direct violation of our Constitution Rights and a great neglect to protect inmates from the COVID Pandemic. I believe the institution should be investigated for this behavior and made to send qualified inmates home on Home Confinement so they can really have protection from the ill effects of COVID 19, mainly the death that it causes.

EXHIBIT   4A

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: MARCH 16, 2021


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SCHUYLKILL FCI

TO  : ERIC PONDER, 61775-066
      SCHUYLKILL FCI     UNT: CAMP     QTR: E01-019L
      P.O. BOX 700
      MINERSVILLE,  PA 17954


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

    REMEDY ID       : 1068535-F2      ADMINISTRATIVE REMEDY REQUEST
    DATE RECEIVED   : MARCH 16, 2021
    SUBJECT 1       : OTHER OPERATIONS
    SUBJECT 2       : OTHER MEDICAL MATTERS
    INCIDENT RPT NO:

    REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                     (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                     ABOUT.

    REJECT REASON 2: SEE REMARKS.

    REMARKS         : YOU HAD 5 DAYS FROM YOUR 2-9-21 REJECTION TO
                     RESUBMIT.

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

EXHIBIT 4B

REQUEST FOR ADMINISTRATIVE REMEDY

#003-02

3/8/2021

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Eric Ponder      61775-066      Camp 1 A-19 Schuylkill

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

Schuylkill institution is failing to protect me from COVID 19 in violation of my 8th amendment rights to the United States Constitution. Previous BP 9 was rejected and sent back for correction. I've now filed a BP 8, I've included an extra copy of attached page. And submit the following response. According to the FBOP Program Statement, inmates are allowed to file "multiple, related incidents" on one form. A BP 9 that is not DHO related has no case number for reference but is assigned a reference number with the Warden's response. The 5 day period to correct any errors is void since the BP 9 was rejected February 9th and returned to inmate, by regular mail, 13 days later February 22. I resubmit by complaint to include racial indifference.

Please see attachments.

*Eric Ponder*

March 09, 2021

| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

*[stamp: Warden's Office]*

| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**      CASE NUMBER: 1068535-F2

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

EXHIBIT 4C

TRULINCS 61775066 - PONDER, ERIC - Unit: SCH-E-A
--------------------------------------------------------------------------------

FROM: 61775066
TO:
SUBJECT: BP'9
DATE: 02/07/2021 02:12:14 PM

Please accept this as my complaint against F.C.I. /SCP Schuylkill for failure to protect me from COVID 19 as a direct violation of my 8th amendment rights afforded by the United States Constitution. Instead of sending qualified inmates to Home Confinement or recommending them for Compassionate Release as directed by Former A.G. Barr, F.C.I. Schuylkill has touted their ability to safely protect inmates from the corona virus. And have manipulated inmates PATTERN Scores and misrepresented inmates medical records to make qualified inmates seem unqualified. While stating they have correct procedures in place to protect inmates and offer proper treatment in accordance to CDC recommendations and directives.

The first week of December, F.C.I. Schuylkill experienced a COVID 19 outbreak at the medium facility. Approximately two weeks later, SCP (camp) begin to experience an outbreak as well. December 23rd all camp inmates, approximately 130 inmates, were tested for COVID 19. Although only approximately 34 inmates tested positive, all inmates from the camp were moved inside the medium facility for quarantine, despite their present custody levels being minimum security. January 11th, 20 days into quarantine, all inmates who tested positive during the first testing were sent back to the camp and all other inmates were made to remain for further quarantining. On January 12th all inmates were tested for a second time and approximately 31 more inmates tested positive. Despite only 31 inmates testing positive, all inmates were made to continue quarantining. January 25th, 34 days into quarantining, those inmates who tested positive during the second testing was released back to the camp and the remaining inmates were made to continue quarantining. On January 26 all remaining inmates were tested and five inmates tested positive. It's important to note that two of these inmates who tested positive were transfers from other institutions and never spent one day in SCP Schuylkill Camp. And they had already been in the SHU in the medium quarantining for a extensive period of time. One inmate expressed that he had been in quarantine since November of 2020. Yet, on January 29th, all inmates who tested negative, all three times of testing were finally released to go back to the camp while the inmates who tested positive were made to continue quarantining. I never read any CDC guidelines which called for 38 days of quarantining and three negative test.

During this quarantine, inmates were locked in a cell for 24 hours, seven days a week, with the exception of 15 minute showers on Monday, Wednesday and Friday. Inmates had no access to phones, computers, commissary, proper medication, were served cold food who's proportions weren't in accordance with the FBOP's daily recommended amount. I was denied medical treatment and told I couldn't get the necessary nasal spray needed for my severe sinus rhinitis because the administration wouldn't allow us to go to the store. Although inmates were allowed to purchase batteries and stamps weekly. I explained to three different nurses the necessity of my nasal spray and if I couldn't buy it from commissary, medical should supply me with it. This request went ignored for 38 days.

No one was given proper treatment. There were no ventilation/respirator machines. Inmates were just locked in their cell for the virus to run it's course and supplied with Tylenol. One inmate complained that he was vomitting for five days and felt like he was dying. But never received a trip to the ER. Another inmate, age 80, was confined to his bed for three days and needed help just to use the bathroom, likewise never received a trip to the ER. A third inmate suffers from the long lasting effects of contracting COVID 19 by suffering from lung problems and blood clots.. This inmates was denied Home Confinement by the institution for frivilous reasons to cover up the real cause, Prejudicial discrimination. I too was told by this administration that I had no illnessess that make me vulnerable to contraction COVID 19 and was a Low PATTERN score, with priority given to inmates who have a Minimum PATTERN score. Needless to say I'm a minimum PATTERN score and have multiple comorbidities making me vulnerable to contracting COVID 19.

No contact tracing was done. And the administration won't acknowledge that the majority of inmates who tested positive worked at UNICOR FACILITY while the outbreak was taking place at the medium facility. Having direct contact with officers who go home everyday and was frequenting the medium during the outbreak. Other inmates were made to work in the lobby of the Medium Facility, cleaning it and then returning back to the Camp. Was the institutions plan "Herd Immunity"? If they all get infected, we don't have to worry about it anymore. And if one or more die, it's the casualties of the war we're fighting against this virus. Without recognizing that one life lost to this virus is "one too many". After all, why else would inmates be taken into an already existing outbreak in order to Quarantine? Like I said, it's a direct violation of our Constitution Rights and a great neglect to protect inmates from the COVID Pandemic. I believe the institution should be investigated for this behavior and made to send qualified inmates home on Home Confinement so they can really have protection from the ill effects of COVID 19, mainly the death that is causes.

SCH/Medical Records~ - c0bc0509-3541-43a3-a25e-4fc318e00b1f

| | | |
|---|---|---|
| **From:** | SCH/InmateToHealthSvcs | |
| **To:** | ~^!PONDER, ~^!ERIC | |
| **Date:** | 10/25/2020 5:16 PM | |
| **Subject:** | c0bc0509-3541-43a3-a25e-4fc318e00b1f | |
| **BC:** | SCH/Medical Records~ | |

Your request was sent to the Medical Records Department. You will be placed on call-out once the documents are prepared for you to pick them up. **It could take up to 30-45 days until your records are available.** A reminder, you could incur a charge if your request is over the amount allowed by policy.

Health Services Administration
FCI Schuylkill

This electronic email system is not a route to sign up to be evaluated for a medical condition. You must attend sick call to be "seen".

.>>> ~^!"PONDER, ~^!ERIC" <61775066@inmatemessage.com> 10/21/2020 12:01 PM >>>
To: Dr Mace or medical staff
Inmate Work Assignment: Camp 1 Orderly

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
c0bc0509-3541-43a3-a25e-4fc318e00b1f
Your response must come from the departmental mail box. Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***

Good afternoon. I'm emailing to request a copy of the results of my latest labs which were taken a few weeks ago. These documents are needed for legal matters. Thank you ver much for your and assitance.

Respectfully Your's

Eric Ponder

12/1/2020 labs dated 9/24/2020 Printed. No HIV. 5 pages.

D. Bingaman, HIT
FCI/FPC Schuylkill



Federal
Bureau of
Prisons

## U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

*** Sensitive But Unclassified ***

| | |
|---|---|
| **Name** PONDER, ERIC | **Facility** FCI Schuylkill |
| **Reg #** 61775-066 | **Order Unit** E01-002L |
| **DOB** 09/19/1969 | **Provider** Ellen Mace-Leibson, CD |
| **Sex** M | |

**Collected** 09/24/2020 13:26
**Received** 09/25/2020 10:54
**Reported** 09/25/2020 14:09
**LIS ID** 317191983

### CHEMISTRY

| Test | Flag | Result | Reference | Units |
|---|---|---|---|---|
| Sodium | | 141 | 137-148 | mmol/L |
| Potassium | H | 5.1 | 3.5-5.0 | mmol/L |
| Chloride | | 104 | 99-114 | mmol/L |
| CO2 | | 24 | 22-30 | mmol/L |
| BUN | | 12 | 7-22 | mg/dL |
| Creatinine | | 1.17 | 0.66-1.25 | mg/dL |
| eGFR (IDMS) | | >60 | | |

GFR units measured as mL/min/1.73 m^2. If African American multiply by 1.210.
A calculated GFR <60 suggests chronic kidney disease if found over a 3 month period.

| Test | Flag | Result | Reference | Units |
|---|---|---|---|---|
| Calcium | | 9.6 | 8.5-10.9 | mg/dL |
| Glucose | | 73 | 70-110 | mg/dL |
| AST | | 30 | 11-55 | U/L |
| ALT | | 14 | <50 | U/L |
| Alkaline Phosphatase | | 69 | 41-133 | U/L |
| Bilirubin, Total | H | 1.9 | 0.2-1.3 | mg/dL |
| Total Protein | | 7.8 | 6.0-8.2 | g/dL |
| Albumin | | 4.5 | 3.6-5.1 | g/dL |
| Globulin | | 3.3 | 2.0-3.7 | g/dL |
| Alb/Glob Ratio | | 1.40 | 1.00-2.30 | |
| Anion Gap | | 12.6 | 9.0-19.0 | |
| BUN/Creat Ratio | | 10.5 | 5.0-30.0 | |

### SPECIAL CHEMISTRY

| Test | Flag | Result | Reference | Units |
|---|---|---|---|---|
| PSA, Total | | 0.332 | 0.064-4.000 | ng/mL |

### HEMATOLOGY

| Test | Flag | Result | Reference | Units |
|---|---|---|---|---|
| WBC | L | 3.3 | 4.3-11.1 | K/uL |
| RBC | L | 4.39 | 4.46-5.78 | M/uL |
| Hemoglobin | | 14.3 | 13.6-17.6 | g/dL |
| Hematocrit | | 45.8 | 40.2-51.4 | % |
| MCV | H | 104.3 | 82.5-96.5 | fL |
| MCH | | 32.6 | 27.1-34.9 | pg |
| MCHC | L | 31.2 | 33.0-37.0 | g/dL |
| RDW-CV | L | 11.4 | 12.0-14.0 | % |
| Platelet | | 276 | 130-374 | K/uL |
| MPV | H | 10.6 | 6.9-10.5 | fL |

**FLAG LEGEND**   L=Low   L!=Low Critical   H=High   H!=High Critical   A=Abnormal   A!=Abnormal Critical



Federal
Bureau of
Prisons

# U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

| Name PONDER, ERIC | Facility    FCI Schuylkill | *** Sensitive But Unclassified *** |
|---|---|---|
| Reg # 61775-066 | Order Unit E01-002L | Collected 09/24/2020 13:26 |
| DOB   09/19/1969 | Provider  Ellen  Mace-Leibson, CD | Received 09/25/2020 10:54 |
| Sex    M | | Reported 09/25/2020 14:09 |
| | | LIS ID    317191983 |

### HEMOGLOBIN A1C

| Hemoglobin A1C | 4.7 | <5.7 | % |
|---|---|---|---|
| 5.7 - 6.4 Increased Risk | | | |
| > 6.4 Diabetes | | | |

---

**FLAG LEGEND**      L=Low    L!=Low Critical    H=High    H!=High Critical    A=Abnormal  A! =Abnormal Critical

 **Federal Bureau of Prisons**

# U.S. Medical Center for Federal Prisons
1900 W. Sunshine Street
Springfield, MO 65807
417-874-1621

| Name PONDER, ERIC | Facility   FCI Schuylkill | *** Sensitive But Unclassified *** |
|---|---|---|
| Reg # 61775-066 | Order Unit E01-002L | Collected 09/24/2020 13:26 |
| DOB   09/19/1969 | Provider  Ellen  Mace-Leibson, CD. | Received 09/25/2020 10:54 |
| Sex    M | | Reported 09/25/2020 15:42 |
| | | LIS ID    317191983 |

## CHEMISTRY, URINE

| | | | | |
|---|---|---|---|---|
| Microalbumin, Urine Random | | <0.6 | | mg/dL |
| Creatinine, Urine Random | | 13.6 | | mg/dL |
| Microalbumin/Creatinine Ratio | H | 44 | 0-29 | ug/mg Cr |

Random mALB Creat ratio:
Category              Result
Normal               Less than 30
Microalbuminuria      30 - 299
Clinical albuminuria    Greater than 300
The ADA recommends that at least two of three specimens collected within a 3 - 6 month
period be abnormal before considering a patient to be within a diagnostic category.
ADA Diabetes Care, Vol. 34: S34, 2011 299ADA Diabetes Care V34 S34 2011e

---

**FLAG LEGEND**      L=Low   L!=Low Critical    H=High   H!=High Critical    A=Abnormal  A! =Abnormal Critical

# Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | PONDER, ERIC | | | | Reg #: | 61775-066 |
| Date of Birth: | 09/19/1969 | | Sex: | M | Race: | BLACK |
| Encounter Date: | 09/25/2020 15:42 | | Provider: | Lab Result Receive | Facility: | SCH |

**Cosigned by Mace-Leibson, Ellen DO CD on 09/28/2020 08:18.**

# Bureau of Prisons
## Health Services
### Cosign/Review

| Inmate Name: | PONDER, ERIC | | | Reg #: | 61775-066 |
|---|---|---|---|---|---|
| Date of Birth: | 09/19/1969 | Sex: | M | Race: | BLACK |
| Encounter Date: | 09/25/2020 14:32 | Provider: | Lab Result Receive | Facility: | SCH |

**Cosigned by Mace-Leibson, Ellen DO CD on 09/28/2020 12:00.**

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: | PONDER, ERIC | | Reg #:  61775-066 |
| Date of Birth: | 09/19/1969 | Sex:  M  Race:  BLACK | Facility:  FTD |
| Encounter Date: | 09/06/2019 13:46 | Provider:  Turner-Foster, Nicoletta | Unit:  Z03 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

**SUBJECTIVE:**

   **COMPLAINT  1**    **Provider:** Turner-Foster, Nicoletta MD/CD

    **Chief Complaint:** PULMONARY/RESPIRATORY
    **Subjective:**   Patient was transferred to another institution prior to the completion of this visit.
    **Pain:**    No

**Seen for clinic(s):** Pulmonary/Respiratory

**OBJECTIVE:**

**Exam:**
   **Diagnostics**
      **Laboratory**
         Yes: Results
      **Radiology**
         No: Results
   **General**
      **Affect**
         Yes: Cooperative
      **Appearance**
         Yes: Appears Well
      **Nutrition**
         Yes: BMI reviewed (enter in comments)
   **Pulmonary**
      **Auscultation**
         Yes: Clear to Auscultation
   **Cardiovascular**
      **Auscultation**
         Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2
         No: M/R/G
      **Vascular**
         No: Carotid Bruits
   **Peripheral Vascular**
      **General**
         No: Pitting Edema
      **Legs**
         Yes: Posterior Tibialis Normal
   **Abdomen**
      **Auscultation**
         Yes: Normo-Active Bowel Sounds
   **Musculoskeletal**

| | | | | |
|---|---|---|---|---|
| Inmate Name: PONDER, ERIC | | | | Reg #: 61775-066 |
| Date of Birth: 09/19/1969 | Sex: M | Race: BLACK | | Facility: FTD |
| Encounter Date: 09/06/2019 13:46 | Provider: Turner-Foster, Nicoletta | | | Unit: Z03 |

**Exam:**

**Gait**

Yes: Normal Gait

**Mental Health**

**Thought Content**

No: Suicidal or Homicidal Ideation

**Exam Comments**

08/07/2019 glucose, BUN, creatinine (0.66-1.25mg/dL), GFR, electrolytes, AST, ALT, TSH, and CBCD are wnls except for WBC 2.6(4.3-11.1 K/uL) and H/H 13.1(13.6-17.6g/dL)/41.2(40.2-51.4%) with MCV 103.3 and RDW low. HgA1C 4.5% (<5.7%) urine microalbumin/creatinine 4(0-29 ug/mg Cr) cholesterol 102, TG 85, HDL 25, LDL 64

**ASSESSMENT:**

Allergic rhinitis, cause unspecified, 477.9 - Current – *Seasonal*

Asthma, unspecified, 493.90 - Current - *Mild Intermittent - STEP 1*
*The patient's peak flow of 800 is > 100% of his predicted value of 626. His peak flow exceeds his target range of 470-626.*

Body mass index (BMI) 28.0-28.9, adult, Z6828 - Current - *BMI 28.2 kg/m2*
*Medically recommended weight is 129-169 lbs*
*The patient weighs 192 lbs which is 23 pounds over the recommended weight range.*
*5'9"*

Presence of unspecified artificial hip joint, Z96649 - Current - *status-post L THR in 2012 or 2013*

**PLAN:**

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 08/06/2020 00:00 | Routine |
| Lab Tests - Short List-General-Ferritin | | | |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-Hemoglobin A1C | | | |
| Lab Tests - Short List-General-PSA, Total | | | |
| Lab Tests-V-Vitamin B12 | | | |
| Lab Tests - Short List-General-Microalbumin & Creatinine, Urine Random | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |

**Additional Information:**

fasting

**New Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Chest-PA/Lateral | One Time | | 12/06/2019 | Routine |

**Specific reason(s) for request (Complaints and findings):**

monitor for pulm clinic

**Schedule:**

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Chronic Care Visit | 09/04/2020 00:00 | Physician 01 |

CARE LEVEL 2
Continue in Pulmonology clinic.

**Disposition:**

Will Be Placed on Callout

| | | | | |
|---|---|---|---|---|
| Inmate Name: | PONDER, ERIC | | | Reg #: 61775-066 |
| Date of Birth: | 09/19/1969 | Sex: | M   Race: BLACK | Facility: FTD |
| Encounter Date: | 09/06/2019 13:46 | Provider: | Turner-Foster, Nicoletta | Unit: Z03 |

**Other:**

CARE LEVEL 2
Continue in Pulmonology clinic.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 09/06/2019 | Counseling | Plan of Care | Turner-Foster, Nicoletta | Verbalizes Understanding |

Patient instructed to purchase medication from commissary for his seasonal allergies.

An Albuterol inhaler was ordered as documented above. He was instructed to perform aerobic exercise for 15–30 minutes a day every other day. The cardiovascular exercises are to be alternated with muscle maintenance exercises which the patient has been educated on.

HIV and Hepatitis B and C are all negative so, leukocytopenia is most likely multifactorial.

Also patient is has a low Hgb but normal Hct with and elevated MCV and low RDW check for Vit B12 deficiency. Also 08/15/2018 hemoglobin electrophoresis revealed HgA 53.8(96.4-98.8) HgS 42(0.0).

Patient instructed to access medical care via sick call as per local institutional procedure if any medical issues should arise prior to his annual chronic care clinic evaluation.

He was informed of his BMI. He was educated extensively on the rationale of manipulating his metabolism and decreasing his caloric intake to decrease his weight (BMI) and consequently, normalizing his serum glucose, lipid profile, and blood pressure.

**Copay Required:** No          **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Turner-Foster, Nicoletta MD/CD on 09/13/2019 14:26

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: PONDER, ERIC | | | Reg #: 61775-066 |
| Date of Birth: 09/19/1969 | Sex: M   Race: BLACK | | Facility: BRO |
| Encounter Date: 09/19/2019 10:24 | Provider: Lee, Dara MD | | Unit: I04 |

Chronic Care - 14 Day Physician Eval encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**       **Provider:** Lee, Dara MD

**Chief Complaint:** GENERAL

**Subjective:** 61775-066 Ponder

50 yo male inmate presents for CCC:

Inmate has a PMH of: asthma, allergic rhinitis, requests intranasal mometasone for allergies. Also requests Benadryl for severe allergies and sinus infections since 15 years old, counseled on getting Claritin from commissary (d/w ACD). He also has a history of L hip replacement in 2012, reports being in SHU for 3.5 months (had some protein abn that we went through together ), c/o of R toe fungus, sickle cell trait/ anemia (will put in CBC and dx code per ACD for travel purposes), and a history of heart murmur (indicates he has not had an echo done).

Meds: albuterol, ipratropium

All aspirin. Neg PPD 2019.

Consults/ labs/imaging reviewed in BEMR and with inmate:

03/2016 CXR WNL

8/19 UA microalb CMP WNL, HDL 25, WBC 2.6, H/H 13.1/ 41.2, A1c 4.5

All questions answered. Counseled inmate on diet, exercise, taking MVT's, preventive medicine and gradual weight loss.

**Pain:** No

**Seen for clinic(s):** Pulmonary/Respiratory, Orthopedic/Rheumatology, General, Cardiac

**Added to clinic(s):** Orthopedic/Rheumatology, General, Cardiac

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 09/20/2019 | 08:36 BRO | 97.9 | 36.6 | | Lee, Dara MD |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 09/20/2019 | 08:36 BRO | 90 | | | Lee, Dara MD |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 09/20/2019 | 08:36 BRO | 16 | Lee, Dara MD |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 09/20/2019 | 08:36 BRO | 113/86 | | | | Lee, Dara MD |

**SaO2:**

| Inmate Name: | PONDER, ERIC | | | | Reg #: | 61775-066 |
|---|---|---|---|---|---|---|
| Date of Birth: | 09/19/1969 | Sex: | M   Race: BLACK | | Facility: | BRO |
| Encounter Date: | 09/19/2019 10:24 | Provider: | Lee, Dara MD | | Unit: | I04 |

| Date | Time | Value(%) Air | Provider |
|---|---|---|---|
| 09/20/2019 | 08:36 BRO | 99 | Lee, Dara MD |

### ROS comments

Constitutional: No fever, chills, NS, unexplained wt loss, LOA, weakness/ fatigue
HEENT: No ha, vision/ hearing changes, sore throat/ goiter, LAD
Pulm: no SOB, cough, dyspnea
CV: no chest pain, hx angina
GI: no N/V/D, abnormal stools/ dysuria
Psych: no SI/HI

### Exam comments

General: Pleasant, cooperative, 50 yo male, NAD, alert and oriented x 3
HEENT: Normocephalic/ AT, PERRLA, EOMI, conjunctivae clear, throat clear, no LAD
Heart: grade III diastolic murmur
Lungs: clear to auscultation B/L, no crackles, no rhonchi, no wheezes.
Abdomen: Soft, non tender, non distended
Extremities: no c/c/e, distal R 1st toe yellow discoloration/ increased thickness in nail
Neuro: CN II-XII grossly intact, normal gait
MSK: strength 5/5 upper and lower extremities b/l (biceps/triceps/ knee extension/ flexion)
Skin: Normal, no rashes, no lesions noted

## ASSESSMENT:

Allergic rhinitis, cause unspecified, 477.9 - Current

Asthma, unspecified, 493.90 - Current

Cardiac murmur, unspecified, R011 - Current

Injury of hip, unspecified, S79919S - Current - *L hip replacement, 2012 (inmate reports)*

Nail disorder, unspecified, L609 - Current - *onychomycosis R 1st toe*

Sickle-cell trait, D573 - Current

## PLAN:

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Mometasone Furoate Nasal | 09/19/2019 10:24 | 2 sprays Per Nostril - daily x 365 day(s) |
| | Indication: Allergic rhinitis, cause unspecified | | |
| | Clotrimazole Solution 1% | 09/19/2019 10:24 | Apply to affected areas Topically - daily x 30 day(s) |
| | Indication: Nail disorder, unspecified | | |

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 377664-BRO | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | 09/19/2019 10:24 | Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) PRN x 365 day(s) |

Indication: Asthma, unspecified

**Discontinued Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|

Inmate Name:   PONDER, ERIC
Date of Birth:   09/19/1969         Sex:   M   Race:   BLACK
Encounter Date:   09/19/2019 10:24   Provider:   Lee, Dara MD

Reg #:   61775-066
Facility:   BRO
Unit:   I04

| | | | |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 08/06/2020 00:00 | Routine |
| Lab Tests - Short List-General-Ferritin | | | |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-Hemoglobin A1C | | | |
| Lab Tests - Short List-General-PSA, Total | | | |
| Lab Tests-V-Vitamin B12 | | | |
| Lab Tests - Short List-General-Microalbumin & Creatinine, Urine Random | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |

**Additional Information:**

fasting

**New Laboratory Requests:**

| **Details** | **Frequency** | **Due Date** | **Priority** |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 08/20/2020 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-Hemoglobin A1C | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |
| **Lab results requested to be notified to:** | Duncan, Gina FNP-BC | | |
| Lab Tests-C-CBC | One Time | 10/04/2019 00:00 | Routine |
| **Lab results requested to be notified to:** | Duncan, Gina FNP-BC | | |

**New Consultation Requests:**

| **Consultation/Procedure** | **Target Date** | **Scheduled Target Date** | **Priority** | **Translator** | **Language** |
|---|---|---|---|---|---|
| Cardiology | 11/20/2019 | 11/20/2019 | Routine | No | |

**Subtype:**

Echocardiogram

**Reason for Request:**

50 yo male inmate grade 3 diastolic murmur, reports that he has never had an echo performed

**Provisional Diagnosis:**

grade 3 diastolic murmur

**Schedule:**

| **Activity** | **Date Scheduled** | **Scheduled Provider** |
|---|---|---|
| Optometry Exam | 10/21/2019 00:00 | Optometrist |
| Pneumococcal conjugate (Prevnar) | 10/21/2019 00:00 | IDC |
| MLP Chronic Care Follow up | 03/20/2020 00:00 | MLP 01 |
| Chronic Care Visit | 09/20/2020 00:00 | Physician 01 |

**Disposition:**

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed

**Other:**

Inmate states he does not use ipratropium

Counseled extensively on getting enough nutrition

**Patient Education Topics:**

| **Date Initiated** | **Format** | **Handout/Topic** | **Provider** | **Outcome** |
|---|---|---|---|---|

Inmate Name:  PONDER, ERIC
Date of Birth:    09/19/1969
Encounter Date:  09/19/2019 10:24

Sex:        M    Race:  BLACK
Provider:  Lee, Dara MD

Reg #:    61775-066
Facility:  BRO
Unit:       I04

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 09/20/2019 | Counseling | Plan of Care | Lee, Dara | Attentive |

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**   No

Completed by Lee, Dara MD on 09/20/2019 10:12

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | PONDER, ERIC | | | Reg #: | 61775-066 |
| Date of Birth: | 09/19/1969 | Sex: | M   Race: BLACK | Facility: | BRO |
| Note Date: | 10/09/2019 10:55 | Provider: | Lee, Dara MD | Unit: | I04 |

Cosign Note - Chart Review encounter performed at Health Services.

**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**          **Provider:** Lee, Dara MD

Ordering smear and folate/B12 levels for 50 yo male with WBC 2.8 L, MCV 100.2 on 10/7/19, previously WBC 2.6, anemic 13.1/ 41.2 H/H, MCV 103.3 on 8/7/19, seen for 14 day on 9/19/19. Last folate/ B12 taken over 2 years ago which was normal.

**New Laboratory Requests:**

| **Details** | **Frequency** | **Due Date** | **Priority** |
|---|---|---|---|
| Lab Tests-F-Folate | One Time | 10/30/2019 00:00 | Routine |
| Lab Tests-V-Vitamin B12 | | | |
| Lab Tests-P-Peripheral Smear (Pathologist Review) | | | |

**Additional Information:**

Ordering smear and folate/B12 levels for 50 yo male with WBC 2.8 L, MCV 100.2 on 10/7/19, previously WBC 2.6, anemic 13.1/ 41.2 H/H, MCV 103.3 on 8/7/19, seen for 14 day on 9/19/19. Last folate/ B12 taken over 2 years ago which was normal.

**Lab results requested to be notified to:**   Duncan, Gina FNP-BC

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:**   No

Completed by Lee, Dara MD on 10/09/2019 11:12

Eric Ponder 61775-066
FCI/SCP Schuykill
P.O. Box 670
Minersville, Pa 17954

RECEIVED
SCRANTON

APR 20 2021

PER_____
DEPUTY CLERK

Clerk U.S. District Court
PO Box 1148
Scranton, Pa. 18501

U.S. POSTAGE PAID
FCM LG ENV
PHILADELPHIA, PA
19107
APR 13 21
AMOUNT
$2.40
R2305K143065-6

UNITED STATES
POSTAL SERVICE

1000          18501